IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

**v.**                                                    **Criminal No. 04-39**

**MAURICE ASKEW**

**MEMORANDUM OPINION REGARDING
PETITIONER'S MOTION TO VACATE (DOC. NO. 95)**

### I. Introduction

Before the Court is Maurice Askew's (hereafter Petitioner) Motion under 28 U.S.C. §
2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("Motion to
Vacate")(doc. no. 95 ).  After careful consideration of the Motion to Vacate, the government's
response thereto, and the files and entire record in the case, this Court finds that one of
Petitioner's allegations entitles him to relief, and that his other allegations are contradicted by
the record.  Accordingly, there is no need to conduct an evidentiary hearing, and the Court will
Grant in part and Deny in part the Motion to Vacate.

### II. Procedural History

On February 26, 2004, a grand jury sitting in the United States District Court for the
Western District of Pennsylvania returned a three count Indictment charging Petitioner with
bank robbery, in violation of 18 U.S.C. § 2113(a), Armed Bank Robbery, in violation of 18
U.S.C. § 2113(d) and using a firearm during and in relation to a bank robbery, in violation of 18
U.S.C. § 924(c).  (Counts 1-3).  Following a jury trial, Petitioner was convicted of all three
Counts.

On March 17, 2005, Petitioner was sentenced to a term of imprisonment of 92 months at Counts I and II, and a 300 month consecutive term at Count III, to be followed by a term of five years supervised release. (Docket Entry 71).[1]  Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit.  On October 26, 2006, the Court of Appeals for the Third Circuit entered an order affirming the Petitioner's conviction and sentence. See *United States v. Askew*, 201 Fed. Appx. 858, 2006 WL 3038116 (3d Cir. 2006).

On February 20, 2008, Petitioner filed a petition to vacate his conviction and sentence. On February 25, 2008, this Court entered an "Order Regarding Miller Notice and Election as to Maurice Askew."  On May 5, 2008, Petitioner elected to withdraw his original motion and to file one comprehensive motion.  On May 15, 2008, this Court entered an order dismissing the motion to vacate and giving the defendant until August 30, 2008 to file a comprehensive motion.  On November 11, 2008, Petitioner filed a motion for equitable tolling with respect to the filing date for the One-All-Inclusive Motion.  The government filed a response indicating that it had no objection to the granting of Petitioner's motion with respect to the extension of the filing date for an all inclusive petition, but retaining its right to argue that the original motion to vacate sentence was not timely filed.

Based on the government's response, this Court entered an Order on December 15, 2008 granting Petitioner's motion and giving the defendant until March 31, 2009 to file a revised Motion to Vacate.  On March 19, 2009, the defendant filed a "Motion to Submit Supplemental Issue For Previously Filed Motion to Vacate, Set Aside, or Correct Sentence Section 2255

---

[1]The conviction for Bank Robbery at Count I merged with the conviction of Armed Bank Robbery at Count II for sentencing purposes, as a lesser included offense.  No additional imprisonment or supervised release was imposed.

Motion." (doc. no. 111). This motion was docketed on March 25, 2009, the government filed its response and petitioner filed two responses thereto. The Motion to Vacate is now ripe.

### III. Background History

On October 3, 2003, at approximately 10:00 a.m., two individuals dressed in dark clothing and masks entered the First National Bank of Pennsylvania in the Moxham section of Johnstown, Pennsylvania. The individuals were armed with handguns and wore masks. They directed employees and customers in the bank to lie on the floor and gave them instructions not to hit any alarms. Notes of Testimony ("N.T."), Trial, December 15, 2004 (doc. no. 85), at 20-26. After entering the bank, one of the armed robbers, an African-American male, jumped onto the counter in front of the teller area and pointed his gun at the tellers. The robber then jumped down on the teller's side of the counter area and began removing money from the teller drawers, placing it in a purple backpack that he was carrying.

The same robber also ordered one teller at gunpoint to direct him to the vault so that he could remove money from there as well. While this occurred, the other robber remained in the customer area, controlling the area at gunpoint and watching the door. *Id*. at 20-36, 39-49. A total of $120,172.00 was stolen during the robbery, including bait money consisting of $20.00 bills from the tellers' drawers. *Id.* at 34-36, 48-49.

After the robbery, police were able to obtain shoe impressions that one of the armed robbers had left on the counter in front of the teller area. In addition, partial shoe impressions were taken from two pieces of paper on which the robber collecting the money had stood. *Id*. at 53-55. On the morning of the robbery, the police located a car with its engine running on a street within a few hundred yards from the bank. The car had been reported stolen from a parking lot

3

in Monroeville, Pennsylvania, 3/10 of a mile from the apartment of one of Askew's girlfriends, Denise O'Neal.  *Id*. at 60-62, 64-67, 159-160.

On the day of the bank robbery, Xondra Nolden, another of Askew's girlfriends, received a call from Askew.  Askew met with Ms. Nolden later that day and told her that he had gone to Johnstown, Pennsylvania and he had robbed a bank.  Ms. Nolden also saw significant sums of money in a safe that Askew kept at her apartment.  *Id*. at 106-115.

On October 14, 2003, a search warrant was executed at the residence of Xondra Nolden, 660 Princeton Boulevard in Wilkinsburg, Pennsylvania.  During the search, a safe that belonged to Askew was recovered.  The safe contained $36,235.00 in cash, including one of the bait bills that had been taken during the course of the robbery.  In addition, officers recovered a plastic bag containing $720.00 from the residence.  *Id.* at 120-121, 138-141, 144-149.

On January 9, 2004, Askew was arrested in connection with the robbery outside of the Cambridge Square Apartments where Askew was residing with Denise O'Neal.  At this time a .40 caliber Ruger handgun, along with live ammunition was recovered.[2]  Subsequently, an additional search warrant was obtained for a further search of Ms. Nolden's residence and a purple backpack, similar to the one used by the armed robber collecting the money from the bank robbery, was found.  *Id*. at 157-158.

### IV.  Motion to Vacate

The Motion to Vacate, as supplemented, raises four grounds for relief alleging ineffective assistance of counsel in violation of Petitioner's Sixth Amendment right to counsel.

---

[2] This gun had been purchased by Xondra Nolden prior to the robbery of the bank. Denise O'Neal also reported that Askew had obtained the firearm from Ms. Nolden during an argument. (*Id.* at 85-87, 97-101, 150-151).

Petitioner claims:  (i) that his trial counsel was ineffective in failing to move to suppress evidence taken from his apartment pursuant to an unsigned search warrant; (ii) that trial counsel was ineffective for failing to object at sentencing to violation of his Sixth Amendment right to notice and a beyond reasonable doubt finding by a jury of facts that drastically enhanced his sentence for his second offense of brandishing a firearm in furtherance of a crime of violence; (iii) that trial counsel was ineffective for not properly entering into evidence a conversation between Witness Xondra Nolden and former Trial Attorney David Chontos, which Petitioner alleges was contradictory to her sworn testimony; and (iv) that trial and appellate counsel were ineffective in failing to raise a double jeopardy issue at sentencing.

## V. Standards for Reviewing Section 2255 Petitions

### A. 28 U.S.C. § 2255: Petition to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

Section 2255 of Title 28 of the United States Code provides that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Further, section 2255 provides that unless the motion to vacate, files and records "conclusively show" that Petitioner not entitled to relief, the court shall:

> cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment

5

> vulnerable to collateral attack, the court shall vacate and set the judgment aside
> and shall discharge the prisoner or resentence him or grant a new trial or correct
> the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

When a defendant brings a motion to vacate sentence pursuant to section 2255, the district court has discretion whether to conduct an evidentiary hearing. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). Exercise of that discretion is constrained by section 2255, however, which requires the district court to hold an evidentiary hearing "'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). This is not a high bar for a movant to meet, especially since the district court, in considering a section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62).

Thus, a section 2255 motion can be dismissed without a hearing only if (1) its allegations, accepted as true, would not entitle the Petitioner relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether movant is entitled to relief . . ." *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

## B. Rules of Procedure for Section 2255 Proceedings

The Rules Governing Section 2255 Proceedings for the United States District Courts (hereafter "Section 2255 Rules") apply to proceedings on an application for relief under Section 2255.  Habeas corpus proceedings are *sui generis*.  *United States v. Bendolph*, 409 F.3d 155, 166 (3d Cir. 2005).  The Federal Rules of Civil and of Criminal Procedure may be applied in section 2255 proceedings, except to the extent they are inconsistent with the Section 2255 Rules, which will prevail in the event of inconsistency.  *Id*.; Section 2255 Rule 12.

The Section 2255 Rules require the district court to conduct a prompt preliminary review of a motion to vacate sentence. Section 2255 Rule 4(b) states, in pertinent part:  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response, within a fixed time, or to take such other action the judge may order.  Section 2255 Rule 4(b).  Rule 5(a) provides that the "respondent is not required to answer the motion unless a judge so orders."  Section 2255 Rule 5(a).  In this case, this Court directed the government to respond to Petitioner's Motion to Vacate.

The Supreme Court has stated that a habeas Petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Yet, discovery is not precluded entirely and Rule 6 of the Section 2255 Rules allows a court to "authorize a party to conduct discovery" under the Federal Rules of Civil or Criminal procedure, or in accordance with the "practices and principles of law," if the party is able to show "good cause" for the discovery requested.  Section 2255 Rule 6(a).  At a minimum, the Petitioner must provide specific allegations from which the court may determine whether

7

granting the request would enable the Petitioner to demonstrate he or she is entitled to relief. *Bracy*, 520 U.S. at 904.  Rule 6(a) also allows for the appointment of counsel under 18 U.S.C. § 3006A, if "necessary for effective discovery."  Section 2255 Rule 6(a).

Section 2255, Rule 7 provides that, as part of the screening process, "the judge may direct the parties to expand the record by submitting additional materials," and may require such materials to be authenticated, provided the court gives to the party against whom the additional materials are offered notice and an "opportunity to admit or deny their correctness."  Section 2255 Rule 7(a), (c). Such materials include letters predating the filing of the motion, documents, exhibits and answers under oath to interrogatories propounded by the judge, and affidavits. Section 2255 Rule 7(b).

"If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Section 2255 Rule 8(a).  If the Court determines that an evidentiary hearing is warranted, counsel must be appointed to represent Petitioner at such hearing under 18 U.S.C. § 3006A, and the court should schedule the hearing "as soon as practicable after giving the attorneys adequate time to investigate and prepare."  Section 2255 Rule 8(c).

### C. The Procedural Default Rule and the "Cause and Actual Prejudice" Standard

"Relief under 28 U.S.C. § 2255 is not available to correct errors that could have been raised at trial or on direct appeal."  *DiModica v. United States*, 2007 WL 2212853, at *2 (D.N.J. July 31, 2007) (citing *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993)).  If a defendant

attempts to raise such errors in a section 2255 motion, the motion will be "procedurally barred." *Id.* (citing *United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003)); *see also Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) ("Put differently, a movant has *procedurally defaulted* all claims that he neglected to raise on direct appeal.") (emphasis added).

However, "courts will exempt a movant from [the procedural default rule] if he can prove . . . that there is a valid cause for the default, as well as prejudice resulting from the default." *Hodge*, 554 F.3d at 379.  As the *Hodge* case stated, plausible ineffective assistance of counsel claims that, if proven, would rise to the level of Sixth Amendment violations, constitute sufficient cause to excuse procedural default.  *Id*. (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) and *Wise v. Fulcomer*, 958 F.2d 30, 34 n. 9 (3d Cir. 1992)).

The "cause and actual prejudice" standard was formulated in *United States v. Frady*, 456 U.S. 152, 167-68 (1982), in which the Supreme Court stated:  "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  To prove "actual prejudice," the movant must show that the alleged trial error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," *Id.* at 170, and that there is a substantial likelihood that, absent the error, a jury would have acquitted him.  *Id.* at 172.

9

### VI. Motion To Vacate is Untimely under 28 U.S.C. § 2255(f)(1) and (f)(4).

### A. Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) amended the federal habeas statute by imposing a statute of limitations on federal prisoners requesting habeas corpus relief pursuant to 28 U.S.C. § 2255.  Section 2255 provides in relevant part:

> A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> > (1) the date on which the judgment of conviction becomes final;
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The period of time for filing a habeas corpus petition under Section 2255 begins to run when the judgment becomes "final." 28 U.S.C. § 2255(f)(1). In *Kapral v. United States,166 F.3d 565* (3d Cir.1999), the United States Court of Appeals for the Third Circuit held:

> [A] judgment of conviction becomes final within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires. If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.

166 F.3d 565, 577 (3d Cir.1999).

Petitioner's judgment of conviction and sentence was entered on March 17, 2005. Petitioner then timely filed an appeal of conviction and sentence with the Court of Appeals. On October 26, 2006, the Court of Appeals entered a final order affirming Petitioner's conviction and sentence, and Petitioner did not seek certiorari review in the Supreme Court within 90 days thereof.  Ninety days after this order, the one year limitation for filing a motion to vacate began, expiring on January 24, 2008.  Petitioner did not file his initial motion to vacate until February 20, 2008, 28 days out of time.

### B. Equitable Tolling

In *Miller v. New Jersey State Dep't of Corr.*,145 F.3d 616 (3d Cir.1998), the Court of Appeals determined that AEDPA's one-year filing requirement is a statute of limitations, not a jurisdictional rule, and thus a habeas petition should not be dismissed as untimely filed if the petitioner can establish an equitable basis for tolling the limitations period. The Court observed in *Miller* that "equitable tolling is proper only when the 'principles of equity would make the rigid application of a limitation period unfair.'"  *Id.* at 618 (quoting *Shendock v. Director, Office of Workers' Comp. Programs,* 893 F.2d 1458, 1462 (3d Cir.1990) (in banc)) (punctuation marks omitted).  This "unfairness" generally occurs "when the Petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' "  *Id.* (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380 (3d Cir.1994)).  Finally, the Court noted that "the Petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims . . . ' Mere excusable neglect is not sufficient." *Id.* at 618-19 (citations omitted).

In other cases, the Court of Appeals has explained that equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some

extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998) (quoting *Kocian v. Getty Refining & Mktg. Co.,* 707 F.2d 748, 753 (3d Cir.1983)). In *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236 (3d Cir.1999), the Court of Appeals held that "equitable tolling may be appropriate [in a Title VII action] when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her." *Id.* at 240 (citing *Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S. 147, (1984)). However, "[A]ttorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances for equitable tolling" in non-capital cases. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001).

In the final analysis, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Midgley*, 142 F.3d at 179 (quotations marks and citation omitted); *see also Seitzinger,* 165 F.3d at 239 ("The law is clear that courts must be sparing in their use of equitable tolling.").

## C. Petitioner's Grounds for Equitable Tolling

As part of his February 20, 2008 motion to vacate, Petitioner stated that despite what he perceived as a lack of diligence on the part of his appellate counsel and case manager, he had a "strong suspicion" that the instant case was still on appeal. In reply to the Government's response to Petitioner's Motion to Vacate, Petitioner's four-sentence response contends only that the Government has the case numbers confused.[3]  Petitioner's only contention for tolling the

---

[3] Petitioner is correct in that Court of Appeals Nos. 04-2675, 05-1462, 05-1463 were affirmed on October 26, 2006.  However, in a separate opinion, the Court of Appeals also affirmed

statute of limitations would appear to be rooted in the "extraordinary circumstances" variety, but he has stated little more than confusion and proof-less accusations of attorney/case management error and deficiency.  Accordingly, Petitioner's Motion to Vacate is untimely.  However, out of an abundance of caution, this Court will address Petitioner's Motion to Vacate on its merits.

### VII. Ineffective Assistance of Counsel

### A.  Strickland Standards

In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court held that the procedural default rule was neither a statutory nor constitutional requirement, but rather, a device used by courts to promote judicial economy and the finality of judgments.  *Id.* at 504.  The Court further held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the Petitioner could have raised the claim on direct appeal."  *Id.*  The standard for deciding an ineffective-assistance-of-counsel claim remains the less stringent two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

In order to succeed on such a claim, a defendant must show (1) that his or her counsel's performance was deficient and (2) that he or she was prejudiced by it.  *Lilly*, 536 F.3d at 195 (citing *Strickland*, 466 U.S. at 687).  The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'"  *Booth*, 432 F.3d at 546 (quoting *McCoy*, 410 F.3d at 132 n.6).  Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his

Petitioner's sentence in this case at No. 05-1884.  As with the previous opinion, this opinion was entered on October 26, 2006.

performance 'f[alls] below an objective standard of reasonableness,' given the particular circumstances of the case at hand." *Hodge*, 554 F.3d at 379 (quoting *Strickland*, 466 U.S. at 688).

In reviewing counsel's performance, this Court must be "highly deferential," which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (quoted in *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007)).  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoted in *Hankerson*, 496 F.3d at 310).  To rebut this presumption, the movant "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).  However, the reviewing court may not indulge in hindsight or "engage in speculation about how the case might best have been tried." *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998).

Under the prejudice prong of the *Strickland* test, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).  Accordingly, the movant will not be entitled to relief "unless [he or she] affirmatively establishes the likelihood of an unreliable verdict." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

The *Strickland* test applies to the performances of both trial and appellate counsel. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004); *United States v. Gray*, 558 F.Supp.2d 589, 595

(W.D. Pa. 2008); *Showers v. Beard*, 586 F.Supp.2d 310, 330 (M.D.Pa. 2008).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see *Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  "The test for prejudice in the appellate context is not whether petitioner would likely prevail upon remand, but whether the sentence or judgment would likely have been reversed and remanded if the issue had been raised on direct appeal."  *Id.* (citing *United States v. Mannino*, 212 F.3d 835, 847 (3d Cir. 2000)).

Appellate counsel is not obligated to raise all issues, but may select those which maximize the likelihood of a successful appeal.  *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance be overcome."  *Smith*, 528 U.S. at 288.  Thus, to show that appellate counsel was ineffective, "a defendant must do more than show that counsel failed to raise every non-frivolous issue."  *Gray*, 558 F.Supp. 2d 595.  Furthermore, a defendant who claims to have been prejudiced by ineffective assistance of appellate counsel "must show that 'there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard.'"  *Id.* (quoting *Mannino*, 212 F.3d at 845).

### B. "Unsigned" Search Warrant

Petitioner's first ground for relief is not supported by the record and is without merit. Petitioner contends that the search warrants used to search the residence of Xondra Nolan (Maurice's girlfriend) at 660 Princeton Boulevard and a safe located at that residence were

unsigned and thus invalid.  Petitioner obtained copies of these warrants from the Department of Justice through the Freedom of Information Act.  The copies he received from the Justice Department are redacted and unsigned.  See Motion to Vacate (doc. no. 95-1[4]) at 5-22. Petitioner further asserts that the copies of the search warrants left at the residence at 660 Princeton Boulevard were unsigned, that he told his trial counsel about this and asked counsel to move to suppress the evidence seized pursuant to the unsigned warrants, and that counsel ignored his requests.

The original court files at the Magistrate Judge dockets at 03-mj-309 and 03-mj-311 have apparently been destroyed, including the affidavits for search warrants and the actual search warrants issued by the Magistrate Judge.  However, uncontradicted testimony by Special Agent Robert Smith at Petitioner's other trial (N.T Case no. 03-244-4 (doc. no. 144) at 47-55; see supra note 4), indicates that the search warrants were presented to a United States Magistrate Judge who determined there was probable cause for the search and seizure of evidence and issued the warrants. Moreover, the docket entries at 03-mj-309 and 03-mj-311 explicitly state that the warrants have been signed and issued by the Magistrate Judge.

Further, the record indicates that Petitioner's counsel addressed the search warrant issue and was satisfied by the warrants' validity.  After Petitioner urged trial counsel to raise the issue, counsel stated:  "I'm quite sure there is a signed copy somewhere, but I don't want to inquire about that and have the government offer it into evidence because it refers to six or seven other bank robberies."  N.T. (doc. no. 86) at 166.   The Court thereafter directed the government to

---

[4] Petitioner, along with his brother, Anthony, and several other co-defendants, was tried and convicted of substantially similar armed bank robberies in Crim No. 03-244-4.  The documents attached to Petitioner's Motion to Vacate are identical to the documents attached in Petitioner's Motion to Vacate in that case (doc. no. 260) at 18-33.

locate the original search warrants, and granted Counsel time to verify the documents and raise any further issues he might have had with the search warrant.  *Id*.  Counsel never notified the Court that he had any challenge to the search warrant, apparently satisfied that the documents were properly signed and authenticated.  In total, after counsel verified the warrant, counsel exercised his legal judgment and strategy, as called for under the second prong in *Strickland*, in not pursuing the warrant issue any further.[5]

Even if the copies left at Petitioner's residence were unsigned, this alleged technical defect would not invalidate the search.  See *United States v. Lipford*, 203 F.3d 259, 269-70 (4th Cir. 2000) (fact that police officer had provided defendant with unsigned copy of search warrant, when the original had in fact been signed, did not require suppression of evidence obtained in search, which "was, at most, a technical violation of Federal Rule of Criminal Procedure 41(d), and not a violation of the Fourth Amendment.  Absent a demonstration of prejudice or bad faith - neither of which is present here - suppression of evidence is not the proper remedy"); *United States v. Jackson*, 617 F.Supp.2d 316 (M.D. Pa. 2008) (collecting cases) (unsigned search warrant contained sufficient indicia of issuance to satisfy Fourth Amendment requirements, and in any event, the good faith exception to the exclusionary rule applied); *United States v. Askew*, 2010 WL 324447, *8 - *9 (W.D. Pa. 2010).

### C. Failure to Raise *Apprendi* Objection to Consecutive Sentences for 924(c) Violations

Petitioner argues that the imposition of sentence at Count Three for the brandishing of firearms in furtherance of an armed bank robbery violates his Sixth Amendment right to have

---

[5] Furthermore, this Court has already ruled on this issue in Denying Petitioner's Motion to Vacate (Case No. 03-244 doc. no. 260) on the issue of the validity of the search warrant.  (Case No. 03-244 doc. no. 273).

sentence enhancing facts found by a jury beyond a reasonable doubt, as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), and subsequent cases, and that counsel was ineffective in failing to raise an *Apprendi* challenge.

Petitioner was charged with using, carrying and brandishing a firearm, namely a .40 caliber Ruger Handgun, during and in relation to a crime of violence, that being the armed bank robbery of First National Bank in Johnstown as alleged in Count Three of the Indictment, contrary to the provisions of 18 U.S.C. § 924(c)(1)(A)(ii).[6]  The Court instructed the jury on the elements of a section 924(c) violation, and the jury convicted Petitioner on this Count.[7]

Pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), this Court sentenced Petitioner to a term of 25 years imprisonment at Count III, consecutive to the term of imprisonment imposed on Counts I and II.  Relying on *Apprendi v. New Jersey*, Petitioner now contends that his trial counsel was

---

[6] In relevant part, section 924(c) states:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and . . .
> (C) In the case of a second or subsequent conviction under this subsection, the person shall
> (i) be sentenced to a term of imprisonment of not less than 25 years; . . .

[7] The jury was instructed that any person who, during and in relation to any crime of violence, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall be guilty of this offense, and that armed bank robbery, which each defendant is charged with committing, is such a crime of violence that satisfies the "is a crime of violence" element of section 924(c), if the jury determined that the government proved beyond a reasonable doubt that the defendant committed the crime of armed bank robbery as charged.

ineffective by not challenging imposition of the consecutive 25 year term of imprisonment because the Indictment did not allege facts or give notice of that statutory provision and the jury was not required to find the facts giving rise to that enhanced, consecutive sentencing provision beyond a reasonable doubt. This issue is without merit, for two reasons.

The jury was, in fact, instructed as to the elements of the section 924(c) violation charged at Count Three and found Petitioner guilty of that offense.  Additionally, the Court instructed the jury on the additional element of armed bank robbery[8], charged at Count II.  Thus the jury actually found all of the facts giving rise to the enhanced, consecutive 25 year sentencing provision, beyond a reasonable doubt, including that the Petitioner had committed the act of armed bank robbery.

Second, by its own terms, *Apprendi* does not apply where the enhancing factor is a prior conviction of record.[9]  See *United States v. Ordaz*, 398 F.3d 236, 240 (3d Cir. 2005) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).  See also *Askew*, 2010 WL 324447 at *10.

---

[8] The instruction read:

> That additional element the government must prove beyond a reasonable doubt is that during the commission of the bank robbery, the defendant either assaulted another person by use of a dangerous weapon or device, or that the defendant put another person's life in jeopardy by use of a dangerous weapon or device.  (doc. no. 87 at 49).

[9] At the time of sentencing, Petitioner was already convicted and sentenced to a term of 468 months incarceration on 6 Counts, including a violation of 18 U.S.C. § 924(c).  See Crim no. 03-244.

### D. The Proffered Testimony of David Chontos

Petitioner, herein, makes his third argument as to why testimonial evidence pertaining to a conversation between Witness Xondra Nolden and Petitioner's former attorney David Chontos should have been admitted.  A brief history of the Petitioner's previous arguments will place the current argument in context.

The trial record shows that trial counsel attempted twice to elicit testimony that Xondra Nolden had committed perjury as to the issue of whether or not she had first-hand knowledge that Petitioner robbed the Johnstown bank.  N.T. Trial (doc. no. 86) at 130 and N.T. (doc. no. 87) at 9.  First, Counsel attempted to illicit information pertaining to a conversation between Ms. Nolden and David Chontos through cross examination.  The Government objected on hearsay grounds and this Court sustained the objection.  N.T Trial (doc. no. 86) at 130.  The following day, Counsel attempted to call David Chontos as a witness in an attempt to elicit testimony regarding the alleged conversation.  At the time, Counsel attempted to present this evidence as a prior inconsistent statement under Federal Rules of Evidence Rule 801(d)(1)(a).  The government objected as hearsay and the Court granted this objection.  N.T. Trial (doc. no. 87) at 9.

Petitioner's second argument for admission came on appeal to the Court of Appeals, where Petitioner alleged that this testimony should have been allowed as extrinsic evidence of a prior inconsistent statement under Federal Rule of Evidence 613(b).  The Court of Appeals summarily disregarded this argument as meritless and affirmed this Court's exclusion of the alleged Nolden/Chontos conversation.  *United States v. Askew*, 201 Fed.Appx. 858, 859 (3d Cir.

2006).[10]  Petitioner now recites the same issue under the rubric that his trial counsel was ineffective for failing to have this same evidence admitted into the record at trial.  Despite prior rulings by this Court and the Court of Appeals that this evidence was inadmissible, Petitioner refuses to accept defeat on this issue and tries to get a third bite of the apple.

Under Federal Rule of Evidence Rule 801, "Hearsay" is defined as a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted.  (emphasis added).  "Whether a statement is hearsay is a legal question subject to plenary review.  If the district court correctly classifies a statement as hearsay, its application of the relevant hearsay exceptions is subject to review for abuse of discretion." *United States v. Price,* 458 F.3d 202, 205 (3d Cir. 2006) (citations omitted).  The deferential abuse of discretion standard is met only when "the district court's action was arbitrary, fanciful or clearly unreasonable"; in other words, when "no reasonable person would adopt the district court's view." *United States v. Frazier,* 469 F.3d 85, 87-88 (3d Cir. 2006).

---

[10] Under Rule 613(b), extrinsic evidence of a prior inconsistent statement is sometimes admissible to impeach a witness's testimony. *See United States v. Mitchell,* 113 F.3d 1528, 1532 (10th Cir.1997). "The rule applies 'when two statements, one made at trial and one made previously, are irreconcilably at odds.' " *United States v. Meserve,* 271 F.3d 314, 320 (1st Cir.2001) (quoting *United States v. Winchenbach,* 197 F.3d 548, 558 (1st Cir.1999)). However, here, the proffered testimony was not "irreconcilably at odds" with Nolden's trial testimony. The fact that Nolden may have told Chontos that she did not tell the FBI that Askew robbed the bank is not inherently inconsistent with her trial testimony that Askew did tell her that he robbed the bank. The proffer concerned what Nolden told the FBI, not what Askew actually told her. Obviously, Chontos could not have testified about whether Askew told Nolden he had robbed a bank. Therefore, Nolden's testimony was not inconsistent with the statements to Chontos. *Askew*, 201 Fed.Appx. 858, 859-860.

The Court of Appeals has held that a trial court's ruling on the admissibility of prior consistent statements is reviewed for abuse of discretion because "[t]his inherently factual inquiry does not have a sufficient legal component to warrant plenary review." *Frazier,* 469 F.3d at 87. Under Rule 801(d)(1)(b), testimony that would normally be inadmissible as hearsay will be allowed if the declarant *testifies at the trial or hearing and is subject to cross-examination concerning the statement*, and the statement is *consistent with the declarant's testimony* and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. (emphasis added).

In addition, two other requirements must be met in order to have a prior consistent statement entered into evidence: *the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony*; and the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *Frazier,* 469 F.3d at 88. (emphasis added).

Petitioner is seeking to admit testimonial evidence for an improper purpose. The United States Supreme Court summarizes this point:

> [I]f . . . Rule [801(d)(1)(b) ] were to permit the introduction of prior statements as substantive evidence to rebut every implicit charge that a witness' in-court testimony results from recent fabrication or improper influence or motive, the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones.

*Tome v. United States,* 513 U.S. 150, 165 (1995).

Under the immediate circumstances, the conversation the Petitioner has sought to enter into evidence was not taken under oath, under penalty of perjury, or subject to cross examination. Further, the proffered testimonial evidence was not consistent with the declarant's

challenged in-court testimony.  In fact, the reason Petitioner previously sought to admit this evidence was because he argued it was *inconsistent* with Ms. Nolden's in-court testimony.  This information falls squarely under the definition of "Hearsay" under Federal Rule of Evidence 801.  For the reasons stated above, the argument is without merit and counsel was not ineffective in failing to make this proffer of admissibility.

### E. Double Jeopardy

As stated above, Petitioner was sentenced to terms of 92 and 300 months of incarceration for Counts II and III based on his convictions for Bank Robbery, in violation of 18 U.S.C. § 2113(a), Armed Bank Robbery, in violation of 18 U.S.C. § 2113(d) and using a firearm during and in relation to a bank robbery, in violation of 18 U.S.C. § 924(c).  In addition, Petitioner was ordered to pay three (3) one-hundred ($100) dollar special assessments for each of those violations, in accordance with 18 U.S.C. § 3013(a)(2)(A).  Based on this sentence, Petitioner contends that the assessments imposed on both offense 18 U.S.C. § 2113(a) and 2113(d) amounts to double jeopardy in that 18 U.S.C. § 2113(a) is a lesser included offense of 18 U.S.C. § 2113(d).

In the recent case of *United States v. Cesare,* 581 F.3d 206 (3d Cir. 2009), the Court of Appeals for the Third Circuit ruled on the exact issue Petitioner contends.  In *Cesare*, the defendant was sentenced to a 53-month prison term as well as two (2) one-hundred ($100) dollar special assessments for violations of 18 U.S.C. § 2113(a) and 2113(d).  The defendant then raised the double jeopardy issue as a challenge to his sentence.  *Id*.

The federal bank robbery statute makes each aspect of a bank robbery a separate offense. Therefore, bank robbery, 18 U.S.C. § 2113(a), is a lesser included offense of armed bank robbery, 18 U.S.C. § 2113(d).  Because each count charged a crime defined by the statute, the

Court ruled that the District Court erred by imposing separate special assessments for each, even though it correctly ordered the terms of imprisonment to be served concurrently.  *Cesare,* 581 F.3d 206, 207, *See Government of Virgin Islands v. Dowling,* 633 F.2d 660, 668 (3d Cir.1980).

This Court recognized that Petitioner's Bank Robbery offense merged with the Armed Count I Bank Robbery offense at Count II.  However, this Court inadvertently and incorrectly assessed an additional one-hundred ($100) dollar assessment at Count I, while imposing no additional terms of imprisonment or supervised release.  This additional assessment does indeed violate Petitioner's right to be protected from double punishment for the same offense.  See *Cesare,* 581 F.3d 206.  Accordingly, this additional assessment of $100 will be vacated.

## VIII. Conclusion

For the foregoing reasons, Petitioner's Motion will be Granted in part and Denied in Part. An appropriate order follows.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:
Maurice Askew, Petitioner
Inmate Number 07973-068
United States Penitentiary Canaan
P.O. Box 300
3057 Easton Turnpike
Waymart, PA 18472

All Counsel of Record